Henry MATTHEWS, Plaintiff,

v.

Donald SELSKY, Director of Special Housing/Inmate Discipline; Leon Sandmann, Corrections Lieutenant, Defendants.

No. 91 Civ. 7277 (JES).

United States District Court,
S.D. New York.

Dec. 12, 1994.

Kaye, Scholer, Fierman, Hays & Handler, New York City (Allan M. Pepper, of counsel), for plaintiff.

G. Oliver Koppell, Atty. Gen. of State of N.Y., New York City (Marilyn T. Trautfield, Asst. Atty. Gen., of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff brought this § 1983 action against prison officials alleging that he was unconstitutionally denied the right to call a witness at a disciplinary hearing. Defendants move for summary judgment dismissing the Complaint. For the reasons that follow, defendants' motion is granted.

### BACKGROUND

On May 2, 1990, plaintiff Henry Matthews ("Matthews"), an inmate at Sing Sing Correctional Facility, was served with a copy of an Inmate Misbehavior Report charging him with a violation of Disciplinary Rule 113.12—Use or Possession of a Controlled Substance ("D.R. 113.12"). *See* Affidavit of Marilyn Trautfield dated June 24, 1992 ("Trautfield Aff."), Ex. A. This charge was based on the positive marijuana result of a urinalysis test that plaintiff took on April 28, 1990, pursuant to a random test of the inmate population. Trautfield Aff., Ex. A. Matthews pled guilty to the charge and was sentenced to forty days in keeplock and loss of privileges. Trautfield Aff., Ex. A.

On June 11, 1990, Matthews was served with another Inmate Misbehavior Report, dated June 4, 1990, which charged him with a second violation of D.R. 113.12. Trautfield Aff., Ex. B. The charge was based on the positive result of a urinalysis test that he took on May 16, 1990, eighteen days after the April 28, 1990 sample. The second sample also confirmed the presence of marijuana. Trautfield Aff., Ex. B. Matthews pled not guilty to the second charge and claimed that the second urinalysis test had detected the marijuana use that had resulted in the first conviction and that he had not used marijuana in the interim. Trautfield Aff., Hearing Tr. at 4.

On June 14, 1990, Matthews met with an employee legal assistant and completed a Superintendent's Hearing Assistance Form in preparation for a Superintendent's Hearing on the charges contained in the June 4, 1994 charge. Trautfield Aff., Ex. C. At that time, Matthews did not request that any

witness be called on his behalf. Trautfield Aff., Ex. C.

The Superintendent's Hearing on the June 4, 1990 Inmate Misbehavior Report was held on Saturday, June 16, 1990, before the designated hearing officer, Corrections Lieutenant Leon Sandmann ("Sandmann"). At the beginning of the hearing, Matthews requested and was granted an adjournment, claiming that he was unprepared to defend himself at that time because he had recently learned of a death in his family. Trautfield Aff., Hearing Tr. at 4–5.

At the hearing, Sandmann confirmed that Matthews had not requested any witnesses prior to the hearing, and Sandmann called Corrections Officer David Flores ("Flores"), who had administered the urinalysis test, to testify about the length of time that marijuana can remain detectable in the human body. Trautfield Aff., Hearing Tr. at 5. Flores stated that the marijuana from "one marijuana joint will stay in your body for approximately 2—3 days;" however, if someone smoked "five cigarettes a day," the marijuana would remain in the system "approximately fourteen days." Trautfield Aff., Hearing Tr. at 6. Based on Matthews's testimony that he did not smoke "five joints a day or more," Trautfield Aff., Hearing Tr. at 6, Flores testified that Matthews was not a chronic user and that marijuana probably would not remain detectable in his body for more than five days. Trautfield Aff., Hearing Tr. at 6–7. Matthews did not cross-examine Flores; rather, given that he recently learned of the death of his brother, he claimed that he was unable to raise a defense because of his emotional state and requested a second adjournment. *See* Trautfield Aff., Hearing Tr. at 7. As a consequence, Sandmann adjourned the hearing until "the inmate [could] clarify his mind and understand what [was] going on." Trautfield Aff., Hearing Tr. at 8.

At the beginning of the second day of the hearing, Sunday, June 17, 1990, Matthews disputed Flores's testimony as to how long marijuana remains detectable in the human body and requested that Sandmann call a representative of Syva Company ("Syva"), the manufacturer of the drug testing equipment, to get an expert opinion on the length of time that marijuana can be present in the body. Trautfield Aff., Hearing Tr. at 10. Sandmann stated that he would not call Syva because he had telephoned the company in the past and had been given the same information that Flores's testimony had established. Trautfield Aff., Hearing Tr. at 9–10. Sandmann also stated that Matthews was not entitled to call Syva as a witness at "the eleventh hour" when he had not requested any witness before the commencement of the hearing. Trautfield Aff., Ex. E. On a form entitled "Superintendent's & Disciplinary Hearings—Witness Interview," Sandmann wrote:

> Inmate Matthews 76–A–2250 is not entitled to call Witness Syva Labs at the 11th hour when a disposition is ready to be made. In all fairness Flores was called by this writer (Hearing Officer) to clarify the testimony of testing, since none of this was requested earlier at the time of assistance on 6/14/90.

Trautfield Aff., Ex. E.

Sandmann found Matthews in violation of Disciplinary Rule 113.12 and sentenced him to one hundred days in keeplock, four months loss of good time credits and one hundred days loss of commissary package and telephone privileges. *See* Affidavit of Henry Matthews dated December 15, 1992 ("Matthews Aff.") at ¶ 3. Matthews appealed the decision to the Commissioner of the Department of Correctional Services ("DOCS"), Donald Selsky ("Selsky"), who affirmed Sandmann's determination. Matthews therefore challenged Selsky's determination in an Article 78 proceeding, wherein New York Supreme Court, Westchester County, vacated the determination and ordered Matthews's records expunged. Complaint, Ex. B.

Matthews then commenced this § 1983 action *pro se* against Selsky and Sandmann, claiming that Sandmann's failure to call a requested witness and Selsky's failure to reverse the determination for that alleged error violated Matthews's constitutional right to due process. Complaint ¶ 4. Defendants move for summary judgment on the grounds that Matthews's due process rights were not

violated[1] and that this action is barred by the doctrines of absolute and qualified immunity. After defendants filed their motion, Matthews secured appointment of a *pro bono* attorney who conducted further discovery and responded to the motion.

## DISCUSSION

Summary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the Court determines that "there is no genuine issue as to any material fact" and that "the moving party is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The State contends that summary judgment is appropriate because Selsky and Sandmann are protected from suit by the doctrine of qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987), because their "conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738.

Specifically, Selsky and Sandmann contend that they are entitled to qualified immunity because "it was not clear" at the time of Matthews's hearing that a hearing officer was required by either federal statute or the Constitution to call an outside witness to testify, particularly when the inmate did not list the witness in advance of the hearing. *See* Defendants' Memorandum of Law at 16; *Fox v. Coughlin,* 893 F.2d 475, 477 (2d Cir. 1990); *see also Anderson v. Creighton,* 483

U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523; *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988) ("the boundaries of the supposed 'right' must be sufficiently definite so that the official understood that his actions violated it or . . . the unlawfulness of his actions was evident").[2]

The right to call "witnesses from the prison population" at a disciplinary hearing has been clearly established since *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974), was decided in 1974. This Circuit, however, has permitted limitations upon a prisoner's right to call such witnesses for reasons "logically related to preventing undue hazards to 'institutional safety or correctional goals,' " *Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985) (citation omitted), or because the proposed testimony is irrelevant or unnecessary. *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir.1991). However, the Supreme Court did not then nor has any federal court since addressed the constitutionality of restrictions on a prisoner's right to call witnesses from outside the prison community.

Moreover, no decisions in this Circuit "clearly foreshadow a ruling" on the constitutionality of a hearing officer's refusal to call an outside witness. *See Shabazz v. Coughlin,* 852 F.2d 697, 701 (2d Cir.1988). Nor are there cases in other circuits condemning or condoning such practices. It follows that the contours of a protected federal right to call such a witness, especially in the midst of the hearing itself, are hardly defined today, and therefore could not have been apparent to a reasonable prison official in 1989.

---

1. After the defendants filed their motion, the Second Circuit decided *Walker v. Bates,* 23 F.3d 652 (2d Cir.1994), and *Mays v. Mahoney,* 23 F.3d 660 (2d Cir.1994). These decisions hold that an inmate's success in an administrative appeal process does not bar a subsequent § 1983 action; rather, a constitutional violation "occurred when the penalty was imposed in violation of state law and due process requirements." *Walker,* 23 F.3d at 657. The defendants concede, therefore, that "defendants' argument that the determination in plaintiff's Article 78 decision cured any alleged defects in his hearing is no longer valid at this time." Defendants' Reply and Supplemental Memorandum of Law at 7–8.

2. Matthews claims that Sandmann's failure to cite the fact that the witness was from outside the prison community as his reason for denial of Matthews's request bars the State from now raising that issue: defendants "cannot after the fact supply additional excuses for Sandmann's determination." Plaintiff's Memorandum of Law at 18. The Court rejects this argument. The Supreme Court has held that an explanation for the denial of a witness at a prison disciplinary hearing may be given either in the disciplinary hearing or in the subsequent court challenge to that hearing, *in camera,* if necessary. *Ponte v. Real,* 471 U.S. 491, 498–99, 105 S.Ct. 2192, 2197, 85 L.Ed.2d 553 (1985).

Therefore, since in 1989 there was, as there remains now, a "legitimate question," *Mitchell v. Forsyth*, 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985), as to whether a prisoner has a right to call a witness from outside the prison community to testify at a disciplinary hearing on the facts here present where the witness was not requested prior to the hearing, Selsky and Sandmann are entitled to qualified immunity as to all of Matthews's claims. Accordingly, summary judgment is appropriate.[3]

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment shall be and hereby is granted. The Clerk of Court is directed to close the above-captioned action.

It is **SO ORDERED.**

---

**3.** Because the Court holds that the defendants are immune under the doctrine of qualified immunity, it is not necessary to examine defendants' claims that Sandmann and Selsky are also entitled to absolute immunity. However, it now appears to be clear that no absolute immunity exists. *See Young v. Selsky, et al.*, 41 F.3d 47 (2nd Cir. (N.Y.)).