**Gregory GAYLE, Plaintiff,**

v.

**T. LUCAS, et al., Defendants.**

No. 97 CIV 0883 MGC.

United States District Court, S.D. New York.

March 1, 2001.

Gregory Gayle, New York City, Plaintiff Pro Se.

Eliot Spitzer, Attorney General of the State of New York by Lynette Phillips, Assistant Attorney General, New York City, for Defendants.

## OPINION

CEDARBAUM, District Judge.

Plaintiff Gregory Gayle, a former prisoner at Sing Sing Correctional Facility acting pro se, sues several correctional officers on the claim that they issued false and retaliatory misbehavior reports against him in violation of 42 U.S.C. § 1983. In an opinion dated March 30, 1998, I dismissed plaintiff's other claims and limited the case to four retaliation claims against defendants Pierri, Roach, Kerrigan, Minde, St. John and Leghorn. *Gayle v. Lucas, et al.,* No. 97 Civ. 0883(MGC), 1998 WL 148416 (S.D.N.Y. March 30, 1998). Defendants now move for summary judgment on the remaining claims. For the reasons discussed below, defendants' motion is granted.

### BACKGROUND

Gregory Gayle was incarcerated at Sing Sing Correctional Facility ("Sing Sing") in Ossining, NY, from the middle of 1994 to late 1997. Joseph Pierri, Harry Kerrigan and Michael Leghorn were at all relevant times correctional officers at Sing Sing with the rank of Sergeant. Matthew Roach, Bruno St. John and James Minde were correctional officers at Sing Sing.

The New York State Department of Correctional Services ("DOCS") publishes a booklet titled "Inmate Rules, Penalties and Outline of Procedures" which sets out standards of inmate conduct applicable to all New York State correctional facilities. Copies of this booklet are available in the law library of every facility, including Sing

Sing. Additional guidelines for inmate conduct at Sing Sing are set forth in DOCS directives and policies, which are also available to the inmates on request. Violations of prison rules result in various punishments, depending on the severity of the violation, including reprimands, loss of privileges, confinement, and transfer to the special housing unit. Gayle was familiar with both the Inmate Rules and the Sing Sing policies and directives.

## A. The June 20, 1996 Incident

In June of 1996, Gayle was authorized to walk with a cane because of a leg injury. He was not permitted, however, to enter the mess area with the cane for safety reasons. Instead, Gayle had received meals in his cell—a practice referred to in the prison as a "feed-up."

On June 15, Gayle was told by the officer in charge that he would no longer receive feed-ups. He complained to several officers that he was unable to get food and that the rule prohibiting him from using his cane in the mess hall was unfair. On June 18, Gayle received a feed-up for 24 hours. On that day, Gayle complained about the situation to John Keane, Superintendent of the facility, who referred him to Frances Higgins, Acting Deputy of Administration. According to Gayle, Higgins told him that he should be able to have food delivered to him if he was unable to walk without a cane and advised him to write her a letter. Gayle sent a written complaint to Higgins on June 19.

On the morning of June 20, Gayle did not receive a feed-up and went down to the mess hall. Because he had his cane, he was denied entry to the mess hall by officer Apfel. Gayle asked to see Sgt. Pierri. Apfel directed him to go outside to the loading dock entrance to the kitchen to see

the sergeant at the desk. Gayle proceeded into the kitchen where he met Pierri. Pierri asked him what he was doing in the mess hall.[1] Gayle asked to receive breakfast or have a tray sent up to his unit. Pierri told Gayle that Deputy Higgins said that Gayle was not to get a feed-up and was not allowed in the mess hall with his cane. Gayle denied that Higgins had said that and asked Pierri for the correct spelling of his name so he could write a complaint letter to Higgins. Pierri told Gayle that he was "out of place" and ordered him to leave the kitchen.[2] According to defendants, Pierri ordered Gayle to leave three times before he complied. Gayle does not deny that he failed to leave the kitchen when ordered to do so.

The following day, Pierri issued a misbehavior report against Gayle alleging that Gayle was out of place and failed to obey a direct order.[3] At a disciplinary hearing held on July 3, Gayle was found guilty of both charges, and his commissary and recreation privileges were revoked for fifteen days. He was also required to pay a $5.00 mandatory disciplinary surcharge. Gayle appealed the July 3 decision. On appeal, Assistant Deputy Superintendent Healey dismissed the out of place charge as an "inappropriate charge," affirmed the direct order charge and ruled that the penalty imposed on Gayle was fair for a direct order violation.

## B. The April 22, 1997 Incident

On April 22, Gayle was working at a table in the common area of his unit with another inmate named Daniel Baughan. Defendant Roach walked by and saw what he believed to be Gayle giving legal assistance to Baughan. Roach told defendant St. John, who confirmed that Gayle was

---

1. Gayle admits that the kitchen is considered part of the mess hall.

2. See DOCS Inmate Rules, Penalties and Outline of Procedures ("DOCS Inmate Rules"), Rule 109.10 ("Inmates shall not be out of place in any area of the facility.").

3. See id., Rule 106.10 ("All orders of facility personnel will be obeyed promptly and without argument.").

not authorized to provide legal assistance to other inmates.[4] St. John approached Gayle and asked for the papers on which he was working. Gayle refused. He said that it was a "joint complaint" against a correctional officer on behalf of himself and Baughan. St. John then contacted defendant Kerrigan, who also ordered Gayle to turn over the papers. Gayle again refused, asserting that it was a "privileged document." St. John then confiscated the papers.

The complaint confiscated by St. John reads as follows:

> To: Charles Greiner, Superintendent
>
> From: Daniel Baughan, # 94–A–6474
>
> Dated: April 22, 1997
>
> Subject: Formal Complaint and Investigation Request
>
> I am forwarding this memorandum to you Supt. Greiner as a formal complaint and investigation request against C.O.S. Acevedo and his Latin Gang of security staff for continuous harassment and retaliation against mé for writing a complaint against C.O. Acevedo previous [sic] which was sent to John P. Keane and dated February 14, 1997.
>
> It appears that each time any prisoner writes a formal complaint against this specific officer or any of his comrade [sic], some type of retaliation evolves and this can be contested to by Gregory Gayle, # 86–A–5274 in 9/1–46B; where C.O. Acevedo made a statement out loud enough for Mr. Gayle to hear stating "you're going to blow the spot up, keep it up, certain individuals are going to make it hot." Mr. Gayle did inform Sgt. Fitzgerald of this incident.
>
> However, despite numerous complaints against this named officer, seems like nothing is being done, but the conduct is allowed.

Gayle and Baughan maintain that both of them intended to sign the complaint, but it was confiscated before they had the chance.

After confiscating the complaint, St. John issued a misbehavior report, which charged Gayle with failing to obey a direct order and giving unauthorized legal assistance. Gayle was put on "cube confinement" pending the disciplinary hearing on the charges.[5] On the same day, Gayle submitted a formal complaint against Kerrigan, Minde, St. John and Roach about this incident.

On May 4, Gayle was found guilty of failing to obey a direct order. The hearing officer dismissed the unauthorized legal assistance charge as "not substantiated." Gayle was counseled "to impress upon [him] that all orders of facility staff must be obeyed promptly and without argument" and was required to pay a $5.00 disciplinary surcharge, but was not otherwise disciplined.

### C. The April 23, 1997 Incident

On April 23, while on cube confinement as a result of the confrontation the previous day, Gayle left his cubicle several times to go to the bathroom and once to get a "sick-call" slip without asking permission. Roach, who was doing rounds in Gayle's housing unit, ordered Gayle not to leave his cubicle without permission. Gayle did not return to his cubicle and argued with Roach, saying that he could go to the bathroom any time he wanted.

Roach issued Gayle a misbehavior report for failing to obey orders. At a disciplinary hearing held on May 6, Gayle was found guilty of the charge and his commissary, phone and package privileges were revoked for twenty-one days.

---

4. Inmates may only give legal assistance to other inmates if they are authorized to do so by the Superintendent. *Id.*, Rule 180.17. Gayle never received authorization to give legal assistance.

5. *See* Sing Sing Policy and Procedure # 564, Dec. 12, 1994. Pursuant to this policy, prisoners accused of rule violations are confined to cubicles in their housing unit and must ask permission to leave.

D.   The May 12, 1997 Incident

On May 11, Gayle filed a grievance against correctional officers Gibson and Leghorn, which accused them of threatening to issue misbehavior reports. The grievance further alleged that the cubicles in Gayle's housing unit were not in compliance with the standards of the Department of Corrections.

The next day, Gayle went to a different housing unit to visit an inmate housed there. Defendant Leghorn observed Gayle giving legal assistance to another inmate. According to Leghorn, Gayle told him that he was authorized to be in that unit to perform inspections as part of the Fire and Safety work program.[6] Leghorn later checked with the Director of Fire and Safety and discovered that Gayle was not supposed to be performing inspections that day. According to Gayle, the unit officer had given him permission to visit the other inmate. Gayle admits, however, that he was reading and explaining a letter about "some estate stuff" to the inmate.

Leghorn issued Gayle a misbehavior report charging him with being out of place, providing unauthorized legal assistance, and violating DOCS Inmate Rules 107.20 (lying to an officer) and 109.12 (failing to follow facility regulations regarding movement within the facility). At the hearing, Gayle was found guilty of unauthorized legal assistance. Gayle had just been transferred to a new facility, and the hearing officer dismissed the other charges because he wanted Gayle to have "the opportunity to prove [he] can avoid this type of behavior in this facility." State of New York DOCS Disciplinary Hearing Disposition, May 23, 1997. Gayle was given a suspended sentence and was assessed a mandatory $5.00 penalty. The charge was affirmed on appeal.

6.   While at Sing Sing, Gayle was assigned to a Fire and Safety work program. As part of the program, he did clerical work and performed

## DISCUSSION

### A.   Standard For Summary Judgment

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The judge's role in summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a genuine issue exists, a court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *In re Chateaugay Corp.,* 10 F.3d 944, 957 (2d Cir.1993). Nonetheless, "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### B.   Retaliation Claims

Gayle claims that the four misbehavior reports described above were false and issued in retaliation against him for filing grievances against the defendants.

■■■ Retaliation against a prisoner for pursuing a grievance violates the right to petition the government for redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983. *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988). To prevail on a

safety inspections on facility firefighting equipment.

§ 1983 retaliation claim, an inmate plaintiff bears the burden of showing (1) that he engaged in constitutionally protected conduct and (2) that the protected conduct was a substantial motivating factor in the prison officials' decision to discipline the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). If the plaintiff carries that burden, the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff even in the absence of the protected conduct. *Id.* If taken for both proper and improper reasons, state action will be upheld if the action would have been taken based on the proper reasons alone. *Id.* On a motion for summary judgment, if the undisputed facts. demonstrate that the plaintiff engaged in the rule violations for which he was disciplined, defendants are entitled to summary judgment. *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994) (summary judgment for defendants was warranted where inmate plaintiff admitted committing the rule violations alleged in the purportedly retaliatory misbehavior report).

With respect to each incident for which Gayle was issued misbehavior reports, the undisputed facts demonstrate that Gayle committed the rule violations for which he was disciplined. With respect to the charges for which he was not disciplined, Gayle suffered no cognizable deprivation, and it is unnecessary to determine whether those charges were retaliatory.

■ Following the June 20 incident, Gayle was charged with and found guilty of failing to obey orders and being out of place. Gayle does not deny that he failed to leave the kitchen when ordered to do so by Sgt. Pierri. His claim that the failure to obey orders charge was retaliatory cannot be sustained. It is unclear, however, whether Gayle had permission to be in the kitchen and, therefore, whether the out of place charge was accurate.

■ Even assuming that the out of place charge was false, however, Gayle's claim would fail because he did not suffer any constitutional deprivation as a result of the charge. Assistant Deputy Superintendent Healey reversed the out of place charge as unsubstantiated. Reversal of a charge on administrative appeal will not cure a § 1983 violation in connection with that charge if the prisoner began serving his punishment before the appeal. *Walker v. Bates*, 23 F.3d 652, 657–59 (2d Cir.1994) (deprivation of procedural due process at disciplinary hearing not cured by reversal on appeal); *Young v. Molloy*, No. 89–CV–0295E(M), 1994 WL 263459, at *1 (W.D.N.Y. May 24, 1994) (applying *Walker* to retaliation claim). The penalty imposed. on Gayle at the hearing, loss of recreation and commissary privileges, was deferred for 90 days, so that Gayle did not begin serving his punishment prior to the appeal. Further, Assistant Deputy Superintendent Healey, in reversing the out of place charge, found that the penalty imposed at the disciplinary hearing was fair for a direct order violation. Gayle provides no reason to question that finding.

■ Following the April 22 incident, Gayle was charged with and found guilty of failing to obey direct orders. Gayle admits that he was ordered several times to turn over the document on which he was working, and that he failed to do so. He admits, therefore, that he failed to obey direct orders as alleged in the April 22 misbehavior report. Gayle's real grievance is that he believes the order directing him to turn over the complaint was unfair. The Inmate Rules are clear, however, that prisoners must obey "all orders of facility personnel promptly and without argument." DOCS Inmate Rule 106.10. Since it is undisputed that Gayle violated the rule, Gayle's claim that the April 22 misbehavior report was retaliatory cannot be sustained.

Gayle also admits the direct order violation alleged in the April 23 misbehavior report. According to his own testimony, he left his cubicle without permission on several occasions and, when ordered to

return by defendant Roach, he argued that he did not need permission to leave. The undisputed facts show that the April 23 misbehavior report was not false.

■ Gayle's claim arising from the May 12 incident similarly fails. As a result of that incident, Gayle was charged with several violations and found guilty of giving unauthorized legal assistance. Gayle admits that he was helping another inmate read and understand a letter about "some estate stuff." This appears, on its face, to be legal assistance, and Gayle has proffered no evidence or authority to suggest otherwise. It is also undisputed that Gayle was not authorized by the Superintendent to give legal assistance. The other charges were dismissed out of leniency, and it is therefore unnecessary to determine whether they were retaliatory.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgement is granted.

SO ORDERED