Kerwin JOHNSON, Plaintiff,

v.

Philip COOMBE, Jr. Commissioner, John McGinnis Supt. of Downstate Corr. Fac., Walsh, Captain, of Downstate Corr. Fac., Defendants.

No. 01 CIV. 0191(LAK).

United States District Court, S.D. New York.

June 4, 2001.

Kerwin Johnson, New York City, Plaintiff Pro Se.

Judith T. Kramer, Kimberly Ann Dasse, Assistant Attorneys General, Eliot Spitzer, Attorney General of the State of New York, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The plaintiff in this case alleges that correctional facility employees violated his federal constitutional rights by depriving him of the opportunity to present witnesses in his defense at a prison disciplinary hearing. He seeks a declaratory judgment and monetary damages. The matter is now before the Court on the defendants' motion to dismiss on the grounds that plaintiff's claims are time-barred and that defendants have immunity insofar as plaintiff seeks money damages from them in their official capacities.

*Facts*

According to the complaint, the incident that triggered the initial hearing took place on July 18, 1995 at Shawangunk Correctional Facility. The hearing itself occurred on July 26, 1995 in the Downstate Correctional Facility before Captain Walsh, a defendant in this action. At the beginning of the hearing, plaintiff announced that he wanted to call two witnesses, but they were never produced and no explanation was offered for their absence. Plaintiff was found guilty. On August 3, 1995, a penalty of 715 days in the Special Housing Unit ("SHU") and 12 months' loss of good time was imposed.

Plaintiff appealed to Superintendent McGinnis and to Commissioner Coombe, both defendants in this action. The former appeal was denied but, on September 27, 1995, the latter resulted in a decrease in plaintiff's penalty to one year in SHU with loss of all privileges and twelve months' loss of good time.

On February 6, 1995, plaintiff filed an Article 78 proceeding in Albany County Supreme Court. From there it was transferred to the Appellate Division, Third Department, which on November 13, 1997 annulled the matter and expunged all reference to it in plaintiff's records.[1]

*Discussion*

### 1. Statute of Limitations

Courts considering Section 1983 claims borrow the general or residual statute of limitations for personal injury actions,[2] which in New York is three years.[3] Although state law provides the applicable statute of limitations, federal law deter-

---

1. *Johnson v. Coombe,* 244 A.D.2d 664, 664, 664 N.Y.S.2d 372, 373 (3d Dept.1997).

2. *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989).

3. *E.g., Harris v. City of New York,* 186 F.3d 243, 247–48 (2d Cir.1999).

mines when the federal claim accrues.[4] Determining when this occurred is not as simple as movant's cursory paragraph would suggest, as this case lies at the messy intersection of "the two most fertile sources of federal-court prisoner litigation,"[5] federal habeas corpus and Section 1983.

### (a) Accrual of Plaintiff's Claims

When plaintiff's cause of action accrued depends on whether plaintiff's claims are more properly characterized as challenging the conditions or the "fact or length" of his sentence. The key case is *Heck v. Humphrey*, in which the Supreme Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."[6] Building on its earlier decision in *Preiser v. Rodriguez*,[7] the Court applied this rule only to actions that, if successful, would "imply the invalidity of [a prisoner's] conviction or sentence."[8]

The Supreme Court elaborated on these issues in *Edwards v. Balisok*,[9] in which the plaintiff sought damages and declaratory relief for his claim that a procedurally defective hearing resulted in a sentence of administrative segregation and revocation of his good-time credits. The Court held that in those circumstances the prisoner could not bring a Section 1983 claim until the prison disciplinary decision had been overturned.[10] It reasoned that a successful showing that the prisoner unconstitutionally was denied the right to present witnesses at the disciplinary hearing would imply that the denial of good-time credits was invalid, which in turn would affect the length of plaintiff's sentence. In reaching its decision, the Supreme Court focused exclusively on the good-time credits.

Following *Edwards*, there was some confusion in the lower courts about whether disciplinary sanctions that affected only conditions of confinement amounted to a "conviction or sentence" that would trigger the *Heck* rule.[11] In *Jenkins v. Haubert*, the Second Circuit resolved the question for this circuit, holding that *Heck*'s "favorable termination requirement" does not apply when a prisoner "alleges a constitutional violation arising out of the imposition of intra-prison disciplinary sanctions that have no effect on the duration of the prisoner's overall confinement,"[12] in that case a sentence to time in keeplock.

From these cases it is clear that the plaintiff's cause of action based on the revocation of good-time credits accrued—and the statute of limitations began to run—on November 13, 1997, when the Appellate Division annulled the prison disciplinary decision. What is less clear is whether the challenge to the conditions of confinement accrued at the same time or

---

4. *E.g., Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir.1992).

5. *Heck v. Humphrey*, 512 U.S. 477, 480, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

6. *Id.* at 489–90, 114 S.Ct. 2364.

7. 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (holding that habeas is the only federal remedy for a claim for injunctive relief that affects the fact or length of a prisoner's incarceration and that exhaustion is required in such cases).

8. *Heck*, 512 U.S. at 486, 114 S.Ct. 2364.

9. 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

10. *See id.* at 643–47, 117 S.Ct. 1584.

11. *See Jenkins v. Haubert*, 179 F.3d 19, 25 (2d Cir.1999) (noting confusion and collecting cases).

12. *Id.* at 21; *Jackson v. Johnson*, 15 F.Supp.2d 341, 347 (S.D.N.Y.1998).

could have been pursued separately earlier. On the one hand, the Supreme Court imposed *Heck*'s "favorable termination requirement" in *Edwards*, which involved such a mixed sentence. On the other hand, as the Second Circuit pointed out in *Jenkins*, *Edwards* focused exclusively on the revocation of good-time credits, leaving open not only the question whether claims based on administrative segregation alone required favorable termination, but also whether they could be proceeded upon separately.[13]

Following the logic of the line of cases discussed above, it is this Court's view that the answer to the latter question is "no." That is, if in this case the prisoner had brought a Section 1983 claim based on the imposition of time in SHU, a ruling in his favor would have been inconsistent with the decision that led to that sentence. Because that decision also revoked good-time credits, such a suit would "necessarily imply the invalidity of his conviction or sentence"[14] triggering *Heck*'s requirements. *Jenkins* is not to the contrary, as the disciplinary hearing at issue there imposed only sanctions that had no effect on the overall confinement. Accordingly, the plaintiff's cause of action as a whole accrued on November 13, 1997.

### (b) The Date of Filing

■■ Plaintiff signed his complaint on November 10, 2000. It was received in the Pro Se Office on November 16, 2000 and filed in this Court on January 10, 2001. In these circumstances, prisoners proceeding *pro se* get the benefit of the mailbox rule, according to which their documents are considered filed as of the date they were given to prison officials for forwarding to the court.[15] Although it is not clear when the plaintiff gave his complaint to prison officials, "[a]bsent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it."[16] Because the plaintiff signed the complaint less than three years after the cause of action accrued, the motion to dismiss plaintiff's claims as time-barred is denied.

### 2. Immunity from Suit for Money Damages in Official Capacity

■ Movants' second ground for dismissal is that government officials are immune from suit for money damages when sued in their official capacities. While the Court might not adopt this characterization, it is the case that state officials sued in their official capacities are not "persons" for Section 1983[17] and plaintiff's claims are dismissed insofar as they fall into this category. However, this determination does not dispose of all claims because plaintiff seeks a declaratory judgment and punitive and compensatory money damages from officers in their individual capacities.[18]

---

13. *Jenkins*, 179 F.3d at 25.

14. *Heck*, 512 U.S. at 487, 114 S.Ct. 2364.

15. *E.g.*, *Noble v. Kelly*, 246 F.3d 93, 97–98 (2d Cir.2001) (citing cases); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir.1993) (applying the "prison mailbox rule" to a Section 1983 complaint filed by a prisoner *pro se* ), *modified on other grounds on reh'g*, 25 F.3d 81 (2d Cir. 1994).

16. *Torres v. Irvin*, 33 F.Supp.2d 257, 270 (S.D.N.Y.1998) (citing cases).

17. *E.g.*, *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

18. Movants also challenge the Court's supplemental jurisdiction over the state law claims, but as the federal law claims have not been dismissed, this ground need not be reached.

### 3. Other Grounds for Dismissal

Consideration of the grounds defendants raised in their motion does not end the Court's inquiry. Under the Prison Litigation Reform Act ("PLRA"),[19] courts have certain obligations to consider *sua sponte* other grounds for dismissal. Pertinent here is the requirement that a court dismiss a complaint filed *in forma pauperis* "if the court determines that . . . the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."[20]

#### (a) Lack of Personal Involvement

■■ "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983' "[21] and that a complaint must allege such personal involvement. In the context of Section 1983, personal involvement consists of direct participation or "failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates."[22]

■ The complaint adequately alleges the personal involvement of Walsh, who was the hearing officer who allegedly deprived the plaintiff of the opportunity to call witnesses. McGinnis, the Superintendent of the Downstate Correctional Facility, and Coombe, the Commissioner of the New York State Department of Correctional Services, are more difficult cases. The complaint asserts that each presided over an appeal that confirmed this deprivation. The Second Circuit has held that allegations that a superintendent affirmed a prisoner's conviction on administrative appeal were sufficient to allege that the superintendent was personally involved in depriving the prisoner of his due process right to call witnesses.[23] This case is unlike those in which there is no allegation that the supervisor or commissioner had actual or constructive notice of the deprivation[24] in that the prisoner alleges a formal appeals process through which both defendants were on notice. Accordingly, the complaint is not dismissed on these grounds.

#### (b) Qualified Immunity

■ Prison officials who participate in disciplinary proceedings are protected by qualified immunity,[25] which shields state officials from liability when they do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Long before the hearing challenged here, in *Wolff v. McDonnell*,[26] the Supreme Court detailed

---

19. Pub.L. No. 104–134, 110 Stat. 1321 (1996).

20. 28 U.S.C. § 1915(e)(2). It is unnecessary to consider whether this action might also be characterized as one "brought with respect to prison conditions," which triggers 42 U.S.C. § 1997e(c), because the requirements the two sections impose are the same.

21. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)).

22. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

23. *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir.1986).

24. *E.g., Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994).

25. *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985).

26. 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

the minimum requirements of procedural due process that must be satisfied in prison disciplinary hearings. One such requirement is that prisoners be allowed to call witnesses, at least when not "unduly hazardous to institutional safety or correctional goals."[27] In circumstances substantially the same as those here, the Second Circuit held that "the denial of an inmate's right to call witnesses ... constitutes ... a compensable constitutional due process violation."[28] Moreover, New York regulations governing the Department of Correctional Services make clear that inmates have the right to request witnesses and, at the very least, to receive an explanation if permission is denied.[29] Because the right was established at the time of the hearing and a reasonable person should have known of the right, the complaint cannot be dismissed on the grounds of qualified immunity.

### Conclusion

The motion to dismiss the complaint is granted to the extent that the damage claims against officers in their official capacities are dismissed, but denied in all other respects.

SO ORDERED.

---

**27.** *Id.* at 566, 94 S.Ct. 2963.

**28.** *Walker v. Bates,* 23 F.3d 652, 656 (2d Cir. 1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995) (citing *Patterson v. Coughlin,* 761 F.2d 886, 893 (2d Cir. 1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986)).

**29.** N.Y. Comp. Codes R. & Regs. tit. vii, § 254.5.