**Stanley MOORE, Plaintiff,**

v.

**Donald SELSKY, et al., Defendants.**

**No. 93 Civ. 0763 (LAK).**

United States District Court,
S.D. New York.

Oct. 13, 1995.

Stanley Moore, Pro Se.

Vincent Leong, Assistant Attorney General, New York City, Dennis C. Vacco, Attorney General of the State of New York, Albany, NY, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This Section 1983 action is brought by an inmate at the Ogdensburg Correctional Facility, which is operated by the New York State Department of Correctional Services

("DOCS"). The defendants are the warden of the Green Haven Correctional Facility ("Green Haven"), where plaintiff was incarcerated at the time of the events in question, two of his subordinates, and Donald Selsky, director of DOCS' special housing and inmate disciplinary program. The case concerns the manner in which plaintiff was found guilty of and disciplined for violating a DOCS rule prohibiting drug use by inmates.

### Facts

On April 30, 1990, plaintiff was ordered to submit to a random urinalysis test. The request for the test indicated that plaintiff had taken medication recently and contained a handwritten note stating "check medical records." (Leong Aff. Ex. 1) According to plaintiff's memorandum, DOCS Directive 4937 provides that inmate medical records "shall" be checked if an inmate reports having taken medication within the past month and the inmate's urine tests positive for drugs. Plaintiff's specimen tested positive for cannabinoids. Plaintiff was charged the following day with the use of drugs.

In conformity with standard DOCS procedure, plaintiff was permitted to select an assistant for the hearing on the misconduct charge and chose Sergeant Shannon, who is among the named defendants in this action. Plaintiff raised with Shannon the issue of access to his medical records, but was told to bring that up at the hearing. (Id. Ex. 8, at 3)

A Tier III disciplinary hearing on the misconduct charge was convened on May 5, 1990 before Lieutenant Ray Sanford. Plaintiff informed Sanford at the outset of the hearing that Shannon had told him to bring the subject of medical records up at the hearing, and Sanford confirmed that this had to be done at the hearing in consequence of a right to privacy law. (Id.) Plaintiff did not in so many words request access to his medical records. Nevertheless, Sanford began to explain the reliability of the test used by DOCS to determine the presence of cannabinoids and read into the record a letter from the manufacturer of the urinalysis test used by DOCS indicating that no known compound, drug or disease can product a false positive test result for cannabinoids or cocaine. (Id. at 5) After further discussion concerning the chain of custody of the urine sample, the calibration of the test instrument, and other matters, Sanford told plaintiff that the test can produce a positive result only if the drug is in the inmate's system. (Id. at 17) The following colloquy then occurred:

"Inmate Moore: Unless·uh, there is other medication that can cause—

"Lt. Sanford: There is none, I just read you that, when we started in the proceeding as a point of interest, so, if we get into that, so you wouldn't be overwhelmed, and I wouldn't be overwhelmed with trying to explain the principal [sic]. The principal [sic] of the test, on these two items, cocaine and marijuana—

"Inmate Moore: Right.

"Lt. Sanford: is this, no matter what else you use, if you have marijuana or cocaine in your blood system or in your urine tract or in your body the machine will pick it up. * * * Now do you have any other questions that you want to ask that pertain to the hearing.

"Inmate Moore: No no." (Id. at 17–18)

Sanford continued his explanation of the reliability of the urine test and concluded by stating, "That's how infallible the machine is." (Id. at 18) Plaintiff responded:

"Inmate Moore: Well based on your statements and your examples, I got to accept what you saying, because like you said, you went to school for it, and you broke it down, so uh, I have no other way of refuting or disputing it. I got to accept that." (Id. at 19)

Sanford then said that he would give plaintiff a day to think about it and reopen the hearing on the following day. (Id.) He indicated that he would not have time to write up a disposition on May 5, but would "be prepared to give [plaintiff] one more shot to ask any questions [he might] want" before giving the disposition at a reconvened hearing on May 6.

Sanford reconvened the hearing on the following day. After some initial discussion concerning a worksheet for the urinalysis

test, plaintiff said that it appeared that Sanford already had made up his mind about the charges and had written out the disposition when plaintiff had walked in on May 6. (*Id.* at 19–20) Sanford responded that plaintiff was correct, but that Sanford had merely done what he had said he would do, i.e., prepare to render a decision at the reconvened hearing. (*Id.* at 20–23)

At the conclusion of the hearing, Sanford found plaintiff guilty and imposed a penalty of, *inter alia,* forty five days of keeplock confinement. At no point during the hearing did plaintiff ask for production of his medical records, seek to have any medical witness called, or specify what medication he claimed to have taken.

Plaintiff appealed to Warden Artuz, also a defendant here. The principal focus of the appeal was the failure of the hearing officer to check plaintiff's medical records, which was said to violate a DOCS policy, and the allegedly improper reliance on the hearsay information from the test manufacturer. (*Id.* Exs. 11–12) The appeal was denied by Artuz on May 21, 1990, who concluded that a check of the medical records had been unnecessary in light of the letter from the test manufacturer. (*Id.* Ex. 13) Plaintiff appealed again to defendant Selsky, who affirmed the decision below on July 5, 1990. (*Id.* Ex. 14)

### Discussion

Defendants move for summary judgment dismissing the complaint. Plaintiff cross-moves for partial summary judgment determining that Lieutenant Shannon conducted a constitutionally deficient disciplinary hearing and that Warden Artuz and Director Selsky are liable for having affirmed the decision. The motions present two preliminary questions and three principal issues. First, the defendants' contend that the keeplock confinement of the plaintiff was not a deprivation of liberty of the sort that requires due process of law and, even if it were, that plaintiff's failure to insist that his medical records be produced indicates that his rights were not violated. After those threshold issues are dealt with, three principal issues remain: (a) whether Lieutenant Sanford deprived plaintiff of his right to due process of

law by relying on the letter from the manufacturer of the drug test without checking plaintiff's medical records (as is apparently required by DOCS policy), (b) whether Lieutenant Sanford violated plaintiff's rights by prejudging the matter, and (c) whether Lieutenant Sanford is entitled to dismissal on the basis of qualified immunity even if he did deprive plaintiff of his rights.

The threshold question is whether the punishment imposed on plaintiff as a result of his conviction on this disciplinary charge deprived him of a liberty interest protected by the Due Process Clause. Following the Supreme Court's decision in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Second Circuit consistently held that New York law created a protected liberty interest in freedom from punitive keeplock. *See, e.g., Soto v. Walker,* 44 F.3d 169, 172 (2d Cir.1995); *Santana v. Keane,* 949 F.2d 584, 585 (2d Cir.1991); *Russell v. Coughlin,* 910 F.2d 75, 77 (2d Cir.1990); *Gittens v. LeFevre,* 891 F.2d 38, 39–40 (2d Cir. 1989). In *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), however, the Supreme Court limited the *Hewitt* approach. It held that the existence of a liberty interest in the prison disciplinary context depends not only on whether State law narrowly restricts prison officials in imposing such punishments, but also on whether the liberty in question is of "real substance," i.e., on whether it will "inevitably affect the duration of [a] sentence" or impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at ——, 115 S.Ct. at 2298, 2300.

The defendants argue that *Sandin* requires dismissal on the ground that plaintiff lacked a protected liberty interest. Because defendants' motion for summary judgment can be granted on other grounds, however, this Court will not reach the question of *Sandin's* impact, a question which this Circuit deliberately has left unanswered as of yet. *Rodriguez v. Phillips,* 66 F.3d 470, 479–80 (2d Cir.1995).

Defendants' next line of defense is their contention that plaintiff never asked that his medical records be produced and never indicated what prescribed drug he claimed may

have caused a false positive test result. Moreover, they place substantial weight on the plaintiff's statement, quoted above, that plaintiff "accepted" Sanford's assertion that the test in question was infallible. This argument is unpersuasive.

The hearing transcript demonstrates that plaintiff asked Sergeant Shannon about his medical records even before the hearing, only to be told that he should raise the point again with the hearing officer. Plaintiff did so. While plaintiff was less explicit than counsel would have been, Sanford knew that plaintiff contended that he had not taken illegal drugs. The trier of fact reasonably could conclude that plaintiff's defense, in part, was that the positive test result was a product of other medication he had taken.[1] Indeed, Sanford's lengthy discourse on the supposed infallibility of the test is strong evidence that he understood plaintiff's position. Looking at this question in the light most favorable to the non-moving party, it is therefore necessary to treat plaintiff's statement as a request that his records be checked. In consequence, Sanford's entitlement to summary judgment on the merits of this issue turns not on some waiver by plaintiff but on whether he violated plaintiff's rights either by relying on the manufacturer's letter rather than check the medical records, or by pre-judging the case, and on whether he is nevertheless immune.

*Failure to Check Medical Evidence*

The gist of plaintiff's claim is that he was denied due process in the prison hearing in two ways: first, he was not allowed to present documentary evidence, his medical records, and second, he was denied an impartial hearing officer because Sanford had concluded from the outset of the hearing that the test could not be inaccurate.

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which was reaffirmed in *Sandin,* the Supreme Court set out the constitutional requisites of prison dis-ciplinary hearings. They "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556, 94 S.Ct. at 2974. There is no general right to confrontation or cross-examination. *Id.* at 567–68, 94 S.Ct. at 2980–81. The principal requirement relevant here is that the inmate "be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. at 2979.

■ The Second Circuit has elaborated in subsequent years on the extent of an inmate's right to present evidence in his or her behalf. A uniform refusal to permit inmates to call other prisoners as witnesses is unjustifiable. *McCann v. Coughlin,* 698 F.2d 112, 123 (2d Cir.1983). The inmate need not be permitted to call a witness if doing so would be futile or the witness would be unnecessary. *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993); *Scott v. Kelly,* 962 F.2d 145, 146 (2d Cir.1992). If the inmate is prevented from calling a witness or offering evidence, however, the burden of justifying that action is on the defendants. *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir.1991).

Here, the record demonstrates that Sanford spoke to the test manufacturer in the month preceding the plaintiff's hearing. On or about April 23, 1990, two weeks before the hearing, he received a letter from the manufacturer, which was read into the hearing record, stating in substance that no drugs or diseases had been identified "which are capable of producing a positive cocaine or cannabinoid test result without respective drugs presence in the urine sample." (Leong Aff. Ex. 8, at 5)

■ In these circumstances, reliance on the manufacturer's letter, hearsay though it was,[2] did not violate any of plaintiff's federal

---

**1.** Plaintiff's failure to name the prescribed drug or drugs is of no moment, at least on a motion for summary judgment. Many individuals blindly follow physicians' advice and thus take medications without knowing either their names or their precise intended purposes. Indeed, it is not clear that physicians or physicians' assistants in

DOCS facilities routinely give this information to their inmate patients.

**2.** Plaintiff complains that reliance on hearsay, in the form of the manufacturer's letter, prejudiced him by denying him the opportunity to cross examine the representative of the manufacturer.

constitutional rights. Indeed, the letter quite likely would carry Sanford's burden of justifying, under the Due Process Clause, the failure to review plaintiff's medical records or to call a medical witness. The decision of a prison disciplinary tribunal satisfies the requirements of the Due Process Clause where there is "some evidence" to support the tribunal's finding. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). In this case the letter from the test manufacturer which was read into the record, answers affirmatively the "relevant question ... whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* Moreover, so long as the requirements of the Due Process Clause are satisfied, the defendants' apparent [3] violation of a DOCS Directive requiring investigation into the medical records of inmates subjected to random drug testing is insufficient to establish violation of plaintiff's right not to be deprived of liberty without due process of law. It is well established that violation of state procedural rules or safeguards does not in itself constitute deprivation of due process, where the process actually provided nevertheless is permissible under the Constitution. *Russell v. Selsky*, 35 F.3d 55, 60 (2d Cir. 1994); *Robinson v. Via*, 821 F.2d 913, 923 (2d Cir.1987); *Patterson v. Coughlin*, 761 F.2d 886, 892 (2d Cir.1985) (court must not "confuse the deprivation of a liberty interest with the denial of the constitutional right to procedural safeguards which is implicated by that interest"), *cert. denied*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). *See also Russell v. Coughlin*, 910 F.2d 75, at 78 n. 1 (2d Cir.1990) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 540–41, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985)). Thus, failure to comply with the DOCS Directive alone would not violate the plaintiff's right to due process, and Sanford's failure to inspect plaintiff's medical records before reaching a decision to place plaintiff in keeplock confinement did not violate the Due Process Clause itself, at least in these circumstances, because his decision was adequately supported.

In any event, even if Sanford's refusal to inspect the plaintiff's medical records had violated plaintiff's right to due process, Sanford nevertheless would be immune from liability on this claim. The doctrine of qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The doctrine, moreover, must be applied at a level of factual specificity sufficient to determine whether a reasonable official would understand that what he or she was doing would violate the plaintiff's rights. *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987).

■ It has been established since *Wolff* was decided in 1974 that inmates in prison disciplinary proceedings have a right to offer documentary evidence and to call witnesses in their defense, when permitting the inmate "to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979; *see also Ponte v. Real*, 471 U.S. 491, 497–99, 105 S.Ct. 2192, 2196–97, 85 L.Ed.2d 553 (1985). The limits of that right, which depend in significant measure on the discretion of prison officials, *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979, however, are not clear even today. Accordingly, it was objectively reasonable for Sanford, in light of the unequivocal letter from the test manufacturer, to believe that a review of plaintiff's medical record would

As noted above, however, prison disciplinary proceedings need not provide an opportunity for confrontation or cross-examination. *Wolff v. McDonnell*, 418 U.S. 539, 567–68, 94 S.Ct. 2963, 2980–81, 41 L.Ed.2d 935 (1974).

**3.** Plaintiff quotes DOCS Directive 4937 ¶ 4(b), at 3, for the procedure prescribed for random drug testing: " ... The inmate shall also be asked if he has been taking any medication in the past month, and the inmate's response SHALL be noted on the Request for Urinalysis Test Form. If the inmate's response is YES and the subsequent test results are positive, an inquiry SHALL be made to medical personnel as to what medications the inmate has received in the past month." The Directive itself was not submitted to the Court, but defendants do not dispute plaintiff's quotation of it.

serve no useful purpose and, in consequence, that the failure to do so would "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

*Alleged Prejudgment*

As plaintiff contends, an official conducting a prison disciplinary hearing may not decide the case before the hearing. *E.g., Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). But plaintiff's contention that Sanford did so here is unconvincing.

There are only two possible bases for plaintiff's contention. The argument he makes explicitly rests on the colloquy quoted above—that Sanford had written up the disposition before the hearing concluded. Implicit, in the Court's view, is a contention that Sanford knew of the manufacturer's assessment of the reliability of the urinalysis test before the hearing began and regarded the test as infallible. Neither, however, warrants the conclusion that plaintiff's rights were violated.

Sanford certainly went into the hearing thinking that the urinalysis test was reliable. But that is not enough to justify a conclusion that plaintiff's due process rights were violated by his serving as the hearing officer.

■ Prison officials serving as hearing officers need not meet the standards of impartiality applicable to judges. "Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process." *Francis,* 891 F.2d at 46 (citing *Cleavinger v. Saxner,* 474 U.S. 193, 203–04, 106 S.Ct. 496, 502–03, 88 L.Ed.2d 507 (1985)); *accord, Crooks v. Warne,* 516 F.2d 837, 839 (2d Cir.1975); *see also Main Road v. Aytch,* 565 F.2d 54, 58–59 (3d Cir.1977). Thus, while an inmate is entitled to a determination of disciplinary charges in circumstances "in which the result is [not] arbitrarily and adversely predetermined," *Francis,* 891 F.2d at 46, it would be unreasonable to expect or require that a hearing officer, nec-

essarily drawn from among corrections personnel whose responsibilities include being aware of efforts to suppress illicit drugs in the prison setting, have no *a priori* view that the test method used by DOCS is at least generally reliable. What is prohibited is only a hearing before an officer who would be unwilling to consider impartially the possibility of error. For example, when a hearing officer states that he will not even consider evidence that a prisoner has introduced because he cannot believe that the prisoner's theory could be true, the hearing officer may be biased. *Colon v. Coughlin,* 58 F.3d 865, 871 (2d Cir.1995).

■ Here, there is nothing to suggest that Sanford would not have been amenable to persuasion had plaintiff offered any evidence challenging the reliability of the test or the manufacturer's statement. Absent such evidence, there is no genuine issue of fact material to the determination whether Sanford impermissibly prejudged the reliability question. Unlike the defendant in *Colon,* Sanford did not flatly refuse to consider plaintiff's contention that the test was inaccurate. He considered the question on the basis of the only evidence introduced, the letter from the manufacturer attesting to the accuracy of the test.

Plaintiff's other argument overlooks the fact that Sanford wrote out his proposed disposition only at the conclusion of the first day of the hearing and only after plaintiff had offered all the evidence that he ultimately offered in the proceeding. The purpose of the second day's session was merely to answer any questions plaintiff might have had and to render the disposition. Even if the second day's session had been more extensive, there is no reason to suppose that Sanford would have been unresponsive to any new evidence or arguments that plaintiff might have offered.

Plaintiff's reliance on *Silva v. Sanford,* No. 91 Civ. 1776 (KMW)(KAR), 1994 WL 455170, 1994 U.S.Dist. LEXIS 11568 (S.D.N.Y. Aug. 18, 1994), is misplaced. In that case, the evidence unmistakably established that the hearing officer (coincidentally the same Lieutenant Sanford who conducted the hearing at issue in this case) was involved in the investi-

gation of the underlying incident and had told someone the punishment that he would impose on the inmate before the hearing began. In this case, there is no such evidence.

The final point warranting brief discussion is plaintiff's claim that Sanford's alleged prejudgment dissuaded him from adducing other evidence on the second day of the hearing. Specifically, he claims in his memorandum before this Court that his wife had told him on the telephone after the May 5 session that certain foods might cause a false positive. But for Sanford's alleged attitude, he claims that he would have called his wife via telephone to establish that point and his brother, also then an inmate, to prove that plaintiff had ingested the foods in question.

To the extent that plaintiff's point is that he was precluded from calling these additional witnesses—and that is a point he did not make in the administrative appeals—it is without merit. If plaintiff had a basis for claiming that there was another possible cause for the positive test result, he was bound to raise it at the hearing and to make a record even if he thought the hearing officer biased, as indeed he did in other respects.

■ The point is equally without merit to the extent it is offered in support of the contention that Sanford prejudged the case. Plaintiff's alleged decision not to offer this additional evidence—and it is highly doubtful that the thought of doing so even occurred to him prior to this action—sheds no light on Sanford's state of mind.

*The Other Defendants*

Plaintiff has conceded that his claim against Sergeant Shannon must be dismissed. The claims against Warden Artuz and Director Selsky are based solely on their having affirmed Sanford's decision. Plaintiff's claims against them are without merit for the same reasons as his claims against Sanford.

*Conclusion*

Defendants' motion for summary judgment dismissing the complaint is granted and the action dismissed. Plaintiff's cross-motion for partial summary judgment is denied.

SO ORDERED.